Myles A. Schneider, #028436
**Myles A. Schneider & Associates, LTD**
14001 N. 7th Street
Suite B104
Phoenix, AZ 85022
Telephone (602) 926-7373
Facsimile (877) 294-4254
Email myles@maschneider.com
**Attorney for Defendant**
**Mohamed A Maio**

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>v.<br>Mohamed A Maio, et al.<br>Defendants. | Case Nos: 2:25-cr-00766-MTL<br>2:26-cr-00488-MTL<br>**DEFENDANT'S SENTENCING MEMORANDUM**<br>**(Defendant in Custody)** |

## I. INTRODUCTION

Mohamed Maio comes before the Court having pleaded guilty and accepted responsibility for serious conduct: a scheme to obtain COVID-19 relief loans through false applications, the laundering of those proceeds, a fraudulent mortgage application, and the unlawful possession of a firearm by a person forbidden to have one. He does not minimize any of it. He was the first of the three family members charged to plead guilty, and he admitted his conduct in the factual basis of his plea. (PSR ¶ 63.)

The Presentence Report calculates a total offense level of 28 and a criminal history category of V, producing an advisory range of 130 to 162 months. (PSR ¶ 153.) That calculation is overstated. As set out in Mr. Maio's pending objections, it rests on a stack of enhancements: a two-level aggravating-role adjustment, a two-level obstruction enhancement, and a two-level sophisticated-means enhancement, together with a conspiracy-wide loss figure attributed to Mr. Maio without individualized findings and a status point that alone lifts him into Category V. Each determination is either unsupported on the facts the PSR recites or cannot stand absent the express findings the Ninth Circuit and Federal Rule of Criminal Procedure 32(i)(3)(B) require. Corrected, the advisory range falls to roughly 51 to 78 months far below the parties' stipulated 120-month cap.

The parties' Rule 11(c)(1)(C) agreements cap Mr. Maio's sentence at 120 months and expressly preserve his right to seek a lower sentence. (PSR ¶¶ 104, 108, 111.) The probation officer nonetheless recommends 130 months; a sentence *above* the negotiated cap that would require the Court to reject the parties' agreements. (PSR ¶¶ 1054, 1064.) That recommendation should be declined. Considering the corrected Guidelines range and the factors set out in 18 U.S.C. § 3553(a), and in particular Mr. Maio's decades-long, untreated substance addiction, his acceptance of responsibility, his support of five children, and the 427 days he has already served, a sentence at the low end of the corrected range and in no event greater than 60 months is sufficient, but not greater than necessary, to serve the purposes of sentencing.

## II. THE HISTORY AND CHARACTERISTICS OF MOHAMED MAIO SUPPORT A SENTENCE WELL BELOW THE CAP

Section 3553(a)(1) directs the Court to consider "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The sentence must "fit the offender and not merely the crime," and the Court may consider "the fullest information possible concerning the defendant's life and characteristics." *Pepper v. United States*, 562 U.S. 476, 488 (2011) (internal quotation marks omitted).

**Addiction.** Mr. Maio has struggled with substance abuse since childhood. He first used alcohol at 12 and marijuana at 14, and by adulthood was drinking daily to intoxication, using cocaine four or five days a week, and using ecstasy weekly — using each up to the time of his arrest. (PSR ¶ 116.) He has attempted treatment repeatedly — outpatient treatment in 2005, a 60-day inpatient program in 2009, a 30-day inpatient program in his early thirties, and outpatient treatment as recently as early 2025 — and has asked for more. (PSR ¶ 117.) The probation officer recognized these "obvious alcohol and drug issues" and recommends that Mr. Maio be considered for the Bureau of Prisons' Residential Drug Abuse Program. (PSR ¶ 1050.) This history is a proper and weighty mitigating consideration. *See Pepper*, 562 U.S. at 481.

**Family.** Mr. Maio is the father of five children, ages 4 to 18, and is under court order to support four of them; he maintains contact with all of them and also supports his girlfriend's young son. (PSR ¶ 110.) He was raised in a traditional household in which he is reported to have been physically and mentally abused by his father, and he is the product of that upbringing. (PSR ¶ 108.)

**Education and work.** Mr. Maio graduated from high school in 2001 and earned a Bachelor of Science in international business from Arizona State University in 2006. (PSR ¶¶ 118, 119.) He has a consistent work history — five years with Verizon Wireless and, since 2019, his own auto-styling business. (PSR ¶¶ 122, 123.) These are the tools of a lawful livelihood on release.

**Acceptance of responsibility.** Mr. Maio admitted his involvement in the factual basis of his plea and pleaded guilty; the PSR awards him the full three-level reduction for acceptance of responsibility. (PSR ¶¶ 63, 83, 84.) He was the first of the three family members to plead guilty.

**III. THE GUIDELINE CALCULATION IN THE PSR IS OVERSTATED**

Before weighing the § 3553(a) factors, the Court must correctly calculate the advisory range. Each of the following objections is a specific factual and legal challenge to an enhancement, and each triggers the Court's duty to resolve the dispute on the record.

**The governing standards.** "[T]he government bears the burden of proving, by a preponderance of the evidence, the facts necessary to enhance a defendant's offense level under the Guidelines." *United States v. Showalter*, 569 F.3d 1150, 1159–60 (9th Cir. 2009). While a court "may rely on undisputed statements in the PSR," once "a defendant raises objections to the PSR, the district court is obligated to resolve the factual dispute, and the government bears the burden of proof…. The court may not simply rely on the factual statements in the PSR." *Id.* at 1160 (quoting *United States v. Ameline*, 409 F.3d 1073, 1085–86 (9th Cir. 2005) (en banc)). A timely objection "require[s] the government to produce at least *some* evidence to support its contention," and reliance on an unexplained PSR statement does not satisfy that burden. *Id.* For each disputed fact on which it intends to rely, the Court must make an explicit finding. Fed. R. Crim. P. 32(i)(3)(B).

**A. The two-level aggravating-role adjustment under U.S.S.G. § 3B1.1(c) (PSR ¶ 69) is unsupported.**

To qualify for a § 3B1.1(c) adjustment, "the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1 cmt. n.2. It is not enough that the defendant was "more culpable than others who participated in the crime"; "there must be evidence that the defendant exercised some control over others involved in the commission of the offense [or was] responsible for organizing others for the purpose of carrying out the crime," and "some degree of control or organizational authority over others is required." *United States v. Avila*, 95 F.3d 887, 890–91 (9th Cir. 1996) (internal quotation marks omitted).

"Control requires more than mere facilitation, and even a finding that the defendant played a central role in the offense is insufficient." *United States v. Harris*, 999 F.3d 1233, 1236 (9th Cir. 2021); *see United States v. Kabir*, 51 F.4th 820 (9th Cir. 2022). The adjustment "does not apply to a defendant who merely suggests committing the offense." U.S.S.G. § 3B1.1 cmt. n.4.

In *United States v. Holden*, 908 F.3d 395 (9th Cir. 2018), the Ninth Circuit vacated a § 3B1.1(c) enhancement where the defendant and the only other participant were "co-equal" conspirators who split profits evenly, holding that "[m]ere facilitation of criminal activity is not sufficient to support the enhancement" and that a defendant must organize *participants*, not merely property or activities. *Id.* at 401–02. The government's theory there — that the defendant "organized" a co-conspirator by giving him "instructions for sending investors' funds to accounts [the defendant] controlled" — was "best characterized as 'facilitation' rather than 'organization.'" *Id.* at 402. The court warned that treating such direction as leadership would mean "nearly every co-conspirator in a limited conspiracy of equals would be an 'organizer'" and the enhancement "would be all but automatic." *Id.* at 402–03.

The PSR rests the adjustment solely on Mr. Maio's having "direct[ed] and assist[ed] Javadpour to submit a fraudulent loan application" for the N. 37th Place property and having prepared a false earnings statement for her. (PSR ¶ 69.) That is the facilitation *Holden* found insufficient. The PSR makes no finding that Mr. Maio controlled his co-defendants, i.e. his parents, Souzan El-Sayed and Abukar Maio, who were co-signatories and co-equal participants throughout the scheme. Directing one accomplice to file one application is not the exercise of "control" or "organizational authority" over a participant that § 3B1.1(c) demands. *See Avila*, 95 F.3d at 892. *The adjustment should be stricken, reducing the offense level by two levels.*

**B. The two-level obstruction enhancement under U.S.S.G. § 3C1.1 (PSR ¶ 70) cannot be applied absent the express findings the Ninth Circuit requires.**

Section 3C1.1 applies only where the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice." U.S.S.G. § 3C1.1. The word "willfully" "contains a clear *mens rea* requirement" that limits the enhancement to defendants who "consciously act with the *purpose* of obstructing justice." *United States v. Lofton*, 905 F.2d 1315, 1316–17 (9th Cir. 1990) (internal quotation marks omitted). The Ninth Circuit's most recent obstruction decision reaffirms that a purely objective application is legal error: the court erred in applying the enhancement where it found only that the defendant's statements "could have been understood" as attempts to obstruct and made "no finding as to whether [he] willfully

obstructed or attempted to obstruct justice." *United States v. Ho-Romero*, 167 F.4th 1037, 1042, 1044 (9th Cir. 2026). For a false statement, the court "must find that: (1) the defendant gave false testimony, (2) on a material matter, (3) with willful intent," and an "express finding" on each element "is required"; a finding that the defendant merely "clearly lied" is insufficient and requires vacatur. *United States v. Castro-Ponce*, 770 F.3d 819, 822 (9th Cir. 2014). "Obstruction of justice is a serious charge, and requires serious proof"; the court "must make explicit findings" that any falsehood was "willful and material." *Id.* at 823. The PSR contains no such findings.

**The residence statement.** A materially false statement to an officer conducting a bail investigation for the court can constitute obstruction and need not actually have obstructed justice. *United States v. Magana-Guerrero*, 80 F.3d 398, 400–01 (9th Cir. 1996). But the government must still establish materiality — that the statement, "if believed," would tend to "influence or affect the issue under determination," such as "entitlement to bail." *Id.* at 400. Mr. Maio was arrested on a warrant and ordered detained. (PSR ¶ 2.) The PSR does not establish how a statement about where he had previously resided could have affected a release determination that was resolved against him on other grounds, and the Court must make an express materiality finding before the enhancement may apply. *See Castro-Ponce*, 770 F.3d at 822.

**The jail calls.** As to the recorded calls, the willfulness requirement controls: the government must prove Mr. Maio "consciously act[ed] with the *purpose* of obstructing justice." *Ho-Romero*, 167 F.4th at 1044. The statements the PSR quotes — urging family members to "stay strong," to decline to cooperate "against each other," and to "[s]top talking about it" (PSR ¶ 70) — are, at most, expressions of a shared decision among family co-defendants not to incriminate one another. They do not, without more, establish the conscious purpose to obstruct the administration of justice that *Lofton* and *Ho-Romero* require, and the Court must make that specific-intent finding before the enhancement can apply. *See United States v. Taylor*, 749 F.3d 842, 848 (9th Cir. 2014); *Ho-Romero*, 167 F.4th at 1044–46.

This determination was already argued in Doc. 105 against the Governments citation of *United States v. Cherette*, 220 Fed. App'x 721 (9th Cir. 2007), for the proposition that Defendant Maio unlawfully influence his Mother as a witness, or attempted to do so, qualifies as obstruction of justice.

First, after Defendant Mohamed Maio's former counsel was relieved from this matter, Defendant and the undersigned worked swiftly and diligently in entering into this plea agreement with counsel conferring with Co-Defendant's counsel to achieve this result. Hence, not only is the enhancement unjustified, it has no basis in law or fact. Hence, the enhancement should not be applied. *At a minimum, it cannot be sustained absent express findings of willfulness and materiality. Sustaining the objection reduces the offense level by two levels*.

**C. The two-level sophisticated-means enhancement under U.S.S.G. § 2B1.1(b)(10)(C) (PSR ¶ 66) overstates the complexity of an ordinary loan-fraud scheme.**

The enhancement applies only where "the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." U.S.S.G. § 2B1.1(b)(10)(C). "Sophisticated means" is "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." *Id.* cmt. n.9(B).

Counsel acknowledges this is the closest of the offense-level questions, and that the Ninth Circuit sets a relatively low bar in so far as conduct "need not involve highly complex schemes or exhibit exceptional brilliance," and concealing income through a "bank account with a deceptive name" has sufficed. *United States v. Jennings*, 711 F.3d 1144, 1145 (9th Cir. 2013). Even a fabricated paper trail short of shell entities may qualify. *See United States v. Tanke*, 743 F.3d 1296, 1307 (9th Cir. 2014). The controlling published decisions, however, involve concealment conduct well beyond what the PSR describes. In *United States v. Garro*, 517 F.3d 1163 (9th Cir. 2008), the defendant "used and incorporated numerous shell corporations," "left behind numerous confusing and misleading documents," "forged signatures on real estate transactions," and had "other associates sign for him … to avoid having his name appear on the transaction or assets." *Id.* at 1173.

By contrast, the PSR describes Mr. Maio submitting false loan applications that overstated payroll and revenue (PSR ¶ 26) and then transferring proceeds among business accounts he and his family controlled (PSR ¶ 44) — the ordinary mechanics of the PPP and EIDL fraud prosecuted in hundreds of cases nationwide. Insofar as the government relies on the Ninth Circuit's affirmance of the enhancement in a COVID-relief case, that discussion is not controlling: the court's merits analysis in *United States v. Terabelian*, 105 F.4th 1207 (9th Cir. 2024), was an alternative holding offered after the appeal was dismissed on fugitive-disentitlement grounds. *Id.* at 1217–18. Because the enhancement still requires conduct that is

"especially complex or especially intricate" relative to the usual fraud, U.S.S.G. § 2B1.1 cmt. n.9(B), and because the PSR describes garden-variety application fraud and account transfers rather than the fabricated paper trails and concealment devices found in the controlling cases, the Court should decline to apply the enhancement or, at minimum, require the government to identify the "especially" intricate concealment conduct attributable to Mr. Maio. *Sustaining the objection reduces the offense level by two levels.*

**D. The loss calculation (PSR ¶¶ 27–28) attributes the entire conspiracy loss to Mr. Maio without the individualized foreseeability finding § 1B1.3 requires and without applying credits against loss.**

The PSR applies a sixteen-level increase on a loss of $2,150,682, "the total loss amount involved in this conspiracy," which it attributes to Mr. Maio jointly with his co-defendants "[a]ccording to the case agent and U.S. Attorney's Office." (PSR ¶¶ 27, 28.) That attribution is not self-proving.

**Foreseeability and scope.** In a jointly undertaken criminal activity, a defendant is accountable for the acts of others only where they were (i) within the scope of the jointly undertaken activity, (ii) in furtherance of it, and (iii) reasonably foreseeable — all three are required. U.S.S.G. § 1B1.3(a)(1)(B) & cmt. n.3(A). A district court "may not automatically hold an individual defendant responsible for losses attributable to the entire conspiracy, but rather must identify the loss that fell within the scope of the defendant's agreement with his co-conspirators and was reasonably foreseeable to the defendant"; knowledge of the conspiracy's overall objectives "is not enough." *United States v. Lloyd*, 807 F.3d 1128, 1134–35 (9th Cir. 2015) (internal quotation marks omitted). The government bears the burden of proving loss by a preponderance. *United States v. Popov*, 742 F.3d 911, 915 (9th Cir. 2014). The PSR makes no individualized finding that each loan obtained by El-Sayed and Abukar was within the scope of, and reasonably foreseeable to, Mr. Maio's agreement; it recites a conclusory joint-and-several figure sourced to "the case agent and U.S. Attorney's Office." (PSR ¶ 28.) The Court must make the foreseeability finding on the record rather than adopt that summary attribution. *See Showalter*, 569 F.3d at 1160.

**Credits against loss.** Loss is calculated in two steps: the court first determines the greater of actual or intended loss, then applies the "credits against loss" provision, deducting "any amount recovered or recoverable by the creditor from the sale of the collateral" — a deduction made "without any consideration of reasonable foreseeability." *United States v.*

*Morris*, 744 F.3d 1373, 1374–75 (9th Cir. 2014). The Guidelines command that loss "shall be reduced by" amounts recovered from collateral or the collateral's fair market value. U.S.S.G. § 2B1.1 cmt. n.3(E). Mr. Maio agreed to forfeit $2,150,682, and the offense involved real property at the N. 37th Place residence. (PSR ¶¶ 104, 10.) Amounts recovered or recoverable — through forfeiture, disposition of collateral, or proceeds that were denied, cancelled, or never funded — must be credited against loss. This matters to the offense level: the sixteen-level increase requires a loss exceeding $1,500,000, and a properly limited and credited figure at or below that threshold reduces the increase to fourteen levels. Counsel acknowledges that credits are unavailable for repayments made only after the fraud was detected. *See Garro*, 517 F.3d at 1167–68.

**E. The criminal history computation overstates Mr. Maio's category.**

**The status point.** The PSR adds one status point under U.S.S.G. § 4A1.1(e) — the point that lifts the score from 11 to 12 and alone establishes Category V. (PSR ¶¶ 95, 96.) That point applies only if the defendant "(1) receives 7 or more points under subsections (a) through (d), and (2) committed [any part of] the instant offense … while under any criminal justice sentence." U.S.S.G. § 4A1.1(e) & cmt. n.5. The PSR premises the point on the Arizona sentence in CR2021-121593-001, which was not imposed until February 2, 2024. (PSR ¶ 93.) Mr. Maio's firearm offense occurred on June 9, 2021 — years before that sentence existed (PSR ¶ 107) — and the dated overt acts of the fraud and money-laundering scheme recited in the PSR occurred largely in 2020 through 2022. A defendant is "under" a criminal justice sentence only where the sentence has been imposed and carries a custodial or supervisory component. *United States v. Madrid-Becerra*, 14 F.4th 1096, 1100 (9th Cir. 2021). Where sentence "has not been imposed, the defendant cannot be 'under' a sentence." *United States v. Kipp*, 10 F.3d 1463, 1466–67 (9th Cir. 1993). The government therefore bears the burden of proving that Mr. Maio personally committed a part of the offense after February 2, 2024, and the Court must make an express finding to that effect rather than rest on the PSR's allegation that the conspiracy continued "through in or about October 2024." *See Madrid-Becerra*, 14 F.4th at 1101–02. If the Court cannot make that finding, the status point must be removed.

**Overcounting.** Counsel also preserves the objections that the 2006 conviction in CR2006-116196-001 (PSR ¶ 89) falls outside the applicable fifteen-year lookback if the sentence and resulting incarceration ended before the window, U.S.S.G. § 4A1.2(e)(1), and that the 2013 and 2015 convictions (PSR ¶¶ 90, 91) — sentenced the same day, June 20, 2016, on

concurrent terms — should be examined for treatment as a single sentence absent an intervening arrest, U.S.S.G. § 4A1.2(a)(2). Sustaining these objections, together with removal of the status point, reduces Mr. Maio's criminal history category from V to IV.

**F. Clerical note on Count Group 2.**

Although Count Group 2 does not drive the total offense level, counsel notes for the record that PSR ¶ 73 states "four levels are added" while describing an offense involving "between three and seven firearms," which corresponds to a two-level increase under U.S.S.G. § 2K2.1(b)(1)(A). (PSR ¶ 73.) The Court should correct the record.

**G. Guideline Calculation Comparison — *United States v. Maio*, Nos. 2:25-cr-00766-MTL & 2:26-cr-00488-MTL**

Side-by-side comparison of the Presentence Report's advisory Guideline calculation and the calculation Mr. Maio advances through his objections previously filed.

**Count Group 1 — Conspiracy to Commit Wire/Bank Fraud, Conspiracy to Commit Money Laundering, and Bank Fraud (Counts 1, 11, 57; U.S.S.G. § 2S1.1)**

| Guideline component | PSR calculation | Maio's calculation |
|---|---|---|
| Base offense level — underlying fraud, § 2B1.1(a)(1) (via § 2S1.1(a)(1)) (PSR ¶ 66) | 7 | 7 |
| Loss enhancement, § 2B1.1(b)(1) (PSR ¶¶ 27–28, 66) | +16 (loss of $2,150,682, attributed conspiracy-wide) | +14 (individualized, credited loss at or below $1,500,000) |
| Sophisticated means, § 2B1.1(b)(10)(C) (PSR ¶ 66) | +2 | +0 (enhancement stricken) |
| Money-laundering conviction, § 2S1.1(b)(2)(B) (PSR ¶ 67) | +2 | +2 |
| Aggravating role, § 3B1.1(c) (PSR ¶ 69) | +2 | +0 (enhancement stricken) |
| Obstruction of justice, § 3C1.1 (PSR ¶ 70) | +2 | +0 (enhancement stricken) |
| **Adjusted offense level (Count Group 1)** (PSR ¶ 71) | **31** | **23** |

**Count Group 2 — Felon in Possession / False Statement (Nos. 2:26-cr-00488; U.S.S.G. § 2K2.1)**

| Guideline component | PSR calculation | Maio's calculation |
|---|---|---|
| Base offense level, § | 14 | 14 |

| Guideline component | PSR calculation | Maio's calculation |
|---|---|---|
| 2K2.1(a)(6)(A) (PSR ¶ 72) | | |
| Firearm count, § 2K2.1(b)(1) (PSR ¶ 73) | +4 (cited as § 2K2.1(b)(1)(D); clerical error) | +2 (three-to-seven firearms, § 2K2.1(b)(1)(A)) |
| **Adjusted offense level (Count Group 2)** (PSR ¶ 77) | **16** (contributes 0 units; does not drive the total) | **16** (contributes 0 units) |

**Combined Offense Level**

| Step | PSR calculation | Maio's calculation |
|---|---|---|
| Greater adjusted offense level (§ 3D1.4) (PSR ¶ 79) | 31 | 23 |
| Acceptance of responsibility, § 3E1.1(a)–(b) (PSR ¶¶ 83–84) | −3 | −3 |
| **Total offense level** (PSR ¶ 85) | **28** | **20** |

*If the Court declines to credit the loss below $1,500,000 but sustains the role, obstruction, and sophisticated-means objections, the total offense level is 22.*

**Criminal History**

| Component | PSR calculation | Maio's calculation |
|---|---|---|
| Subtotal criminal history points (PSR ¶¶ 88–94) | 11 | reduced (2006 conviction outside the § 4A1.2(e) 15-year lookback; 2013 and 2015 concurrent sentences treated as a single sentence under § 4A1.2(a)(2)) |
| Status point, § 4A1.1(e) (PSR ¶ 95) | +1 | +0 (stricken absent proof of offense conduct while under the CR2021-121593 sentence) |
| **Total criminal history points** (PSR ¶ 96) | **12** | **9 or fewer** |
| **Criminal history category** | **V** | **IV** |

**Resulting Advisory Range**

| | PSR calculation | Maio's calculation |
|---|---|---|
| Total offense level / criminal history category | 28 / V | 20 / IV (or 22 / IV) |
| **Advisory guideline range** (U.S.S.G. ch. 5, pt. A) | **130–162 months** | **51–63 months (or 63–78 months)** |

| | PSR calculation | Maio's calculation |
|---|---|---|
| Rule 11(c)(1)(C) stipulated cap (PSR ¶¶ 104, 108) | 120 months | 120 months |
| Probation officer's recommendation (PSR ¶¶ 1054, 1064) | 130 months (above the cap) | — |
| Defense request | — | Low end of corrected range; in no event greater than 60 months |

Sustaining the objections materially lowers the range. Removing the role, obstruction, and sophisticated-means enhancements reduces the Count Group 1 adjusted offense level and, after the three-level acceptance reduction, yields a total offense level of approximately 22 — or 20 if the loss increase is reduced to fourteen levels. With the criminal history category corrected to IV, the advisory range falls to 63–78 months at offense level 22 and 51–63 months at offense level 20. U.S.S.G. ch. 5, pt. A (Sentencing Table). That is roughly half the PSR's 130–162 month range and well below the parties' 120-month cap.

**IV. THE § 3553(a) FACTORS WARRANT A SENTENCE BELOW THE CAP**

Whatever the precise Guidelines figure, the overarching command of § 3553(a) is that the Court "impose a sentence sufficient, but not greater than necessary" to serve the purposes of sentencing. 18 U.S.C. § 3553(a). The Guidelines are "the starting point and the initial benchmark," but the Court "may not presume that the Guidelines range is reasonable" and "must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 49–50 (2007). They are "one factor among the § 3553(a) factors" and are entitled to no greater weight than the others. *United States v. Carty*, 520 F.3d 984, 991–92 (9th Cir. 2008) (en banc). No "extraordinary" circumstances or rigid mathematical formula is required to support a below-Guidelines sentence. *Gall*, 552 U.S. at 47.

**History, characteristics, and rehabilitation.** As set out in Part II, Mr. Maio's decades-long addiction, his acceptance of responsibility, his support of five children, and his stable work history are precisely the individualized considerations § 3553(a)(1) requires the Court to weigh. *See Rita v. United States*, 551 U.S. 338, 364–65 (2007). His demonstrated desire for treatment and his candidacy for the Bureau of Prisons' residential drug program (PSR ¶ 1050) bear directly on the need for the sentence to "provide the defendant with needed … correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). A defendant's prospects for rehabilitation are a proper basis for a downward variance. *Pepper*, 562 U.S. at 481, 491.

*Of equal importance is the fact that, while in custody, Mr. Maio completed over 80 classes while incarcerated at CCA in Florence. See Transcript attached hereto as Exhibit B.*

**Nature and circumstances of the offense.** This was a non-violent economic offense carried out within Mr. Maio's family. Mr. Maio does not excuse it, but the conduct is a product of his untreated addiction and financial distress rather than sophisticated predation, and the loss is the subject of the full restitution and forfeiture obligation described below.

**The firearms conduct.** The probation officer urges that the fraud range does not capture the firearms offenses. (PSR ¶ 1048.) The firearms conduct is serious, and Mr. Maio has accepted responsibility for it by pleading guilty. But it does not justify a sentence above the negotiated cap: his mother, not he, physically purchased the firearms, and the conduct is fully accounted for in the concurrent 36-month term the PSR recommends for Count Group 2. (PSR ¶¶ 1048, 1064.)

**Just punishment, deterrence, and protection of the public.** A sentence in the corrected range, and in no event more than 60 months, reflects the seriousness of the offense and provides just punishment, particularly given the 427 days Mr. Maio has already served (PSR ¶ 38), the substantial restitution and forfeiture obligations he carries, and the lengthy term of supervised release with stringent financial and substance-abuse conditions the PSR recommends. 18 U.S.C. § 3553(a)(2). His self-motivated pursuit of sobriety and lawful work supports the conclusion that a lengthy term is not necessary to protect the public or deter future offenses. *See Gall*, 552 U.S. at 56–57.

**V. THE NEED TO PROVIDE RESTITUTION**

Mr. Maio has agreed to pay full restitution of $2,150,682 to the Small Business Administration, jointly and severally with his co-defendants, and to forfeit $2,150,682 in proceeds. (PSR ¶¶ 104, 164, 1068.) Section 3553(a)(7) directs the Court to consider "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). A sentence that returns Mr. Maio to his auto-styling trade sooner rather than later best positions him to satisfy that obligation through lawful earnings.

**VI. PROPOSED STATEMENT OF REASONS FOR A SENTENCE BELOW THE CAP**

Mr. Maio respectfully submits that a sentence below the advisory range and below the 120-month cap is warranted for the following reasons:

- The aggravating-role, obstruction, and sophisticated-means enhancements are unsupported on this record, and the loss and status-point determinations cannot stand absent express findings; the corrected advisory range is approximately 51 to 78 months. U.S.S.G. ch. 5, pt. A.
- Mr. Maio's decades-long, untreated substance addiction and his demonstrated desire for treatment support a sentence that provides effective correctional treatment. *See Pepper*, 562 U.S. at 481.
- Mr. Maio accepted responsibility, was the first of the family co-defendants to plead guilty and supports five children.
- He has already served 427 days and carries substantial restitution and forfeiture obligations best satisfied through a return to lawful work.
- A sentence within the corrected range is sufficient, but not greater than necessary, to reflect the seriousness of the offense, afford deterrence, and protect the public. 18 U.S.C. § 3553(a).

## IX. CONCLUSION

For the foregoing reasons, Mr. Maio respectfully requests that the Court sustain his objections to the Presentence Report, make the findings required by Federal Rule of Criminal Procedure 32(i)(3)(B), recalculate the advisory Guideline range accordingly, and impose a sentence at the low end of the corrected range and in no event greater than 60 months to run concurrently across both dockets, together with the recommended term of supervised release and a recommendation that Mr. Maio participate in the Bureau of Prisons' Residential Drug Abuse Program. Such a sentence would fulfill the purposes of 18 U.S.C. § 3553(a) and serve the interests of justice.

RESPECTFULLY SUBMITTED this 2nd day of October 2026.

MYLES A. SCHNEIDER & ASSOC., LTD.

/s/Myles A. Schneider

MYLES A. SCHNEIDER (AZ Bar No.:028436)
14001 N. 7th Street
Suite B104
Phoenix, AZ 85022
myles@maschneider.com
Telephone: 602-926-7373
Facsimile: 877/294-4254
**Attorney for Defendant**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2026, I electronically transmitted the attached document using the CM/ECF system for filing, and which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

/s/ Myles A. Schneider

See Also the Following Exhibits submitted under separate cover:

**Exhibit A – Character letter from Mr. Maio's Aunt**

**Exhibit B – Transcript of Classes from CypherWorx**[1]

[1] The Company that educates inmates for CCA offering support and guidance as for inmate reintegration into society.